DAVID GNUTTI *v.* STEPHEN HEINTZ,
COMMISSIONER OF INCOME MAINTENANCE
(13146)

WILFRED SMALLEY *v.* STEPHEN HEINTZ,
COMMISSIONER OF INCOME MAINTENANCE
(13173)

HEALEY, SHEA, CALLAHAN, GLASS and HULL, Js.

Argued January 14—decision released March 22, 1988

*John P. Spilka* and *Joanne Lewis,* for the appellants (plaintiff in each case).

*Hugh Barber,* assistant attorney general, with whom, on the brief, was *Joseph I. Lieberman,* attorney general, for the appellee (defendant in both cases).

SHEA, J. These cases are consolidated administrative appeals from the denial of applications for Title XIX

medical assistance benefits (Medicaid). Title XIX is a medical program administered by the department of income maintenance (DIM) pursuant to federal statutes and regulations. General Statutes § 17-134a et seq.; 42 U.S.C. § 1396 et seq. (1982); 42 C.F.R. § 430.0 et seq.[1]

The plaintiffs David Gnutti and Wilfred Smalley applied separately for disability benefits from the federal Social Security Administration under the Supplemental Security Income (SSI) program. 42 U.S.C. § 1381 et seq. (1982). Each claimed that he was an alcoholic, and was disabled from working as a result of his alcoholism. The Social Security Administration denied each plaintiff's application. Both determinations are presently in various stages of review in accordance with the federal administrative and judicial process.[2]

After having initially been denied federal social security disability benefits, each plaintiff filed a separate application with the DIM for Medicaid disability benefits on the basis that his alcoholism had rendered him unable to work. The standard used for determining disability for the purpose of eligibility for SSI benefits is

---

[1] The parties agree that federal substantive law controls in determining eligibility for Medicaid benefits. They disagree about whether the defendant must follow the five step procedure employed by the Social Security Administration.

[2] Counsel for the plaintiffs provided the following information concerning their federal appeals in a letter dated January 25, 1988. David Gnutti's disability case was appealed to the federal District Court for Connecticut. The federal District Court remanded the case to the Social Security Appeals Council in Arlington, Virginia. The Appeals Council vacated the administrative law judge's (ALJ) unfavorable decision on the issue of disability, and, in accordance with the federal District Court's order, has directed the ALJ to obtain further evidence concerning Gnutti's medical status. Gnutti's case is now pending before the Office of Hearings and Appeals in Hartford. The ALJ must issue a recommended decision after reviewing all the evidence in the file. It is possible that another evidentiary hearing will be conducted. Wilfred Smalley's disability case is pending before the Office of Hearings and Appeals in Hartford. He has not yet had an administrative hearing on the issue of disability. His case should be scheduled for a hearing before an ALJ in March or April, 1988.

the same as that used by the DIM in deciding whether an applicant qualifies for Medicaid disability benefits.[3] Neither plaintiff had exhausted his federal administrative or judicial remedies for obtaining federal SSI disability benefits. There was no claim by either plaintiff when he applied to the DIM that his medical condition had changed since the time he applied for SSI disability benefits. A medical review team (team) employed by the DIM examined each plaintiff. The team found each plaintiff to be ineligible for disability benefits. The plaintiffs requested hearings before a fair hearing officer (FHO). The FHO who conducted the hearing concerning Gnutti found that he was able to work despite his alcoholism, and, as a result, determined that he was ineligible for Medicaid disability benefits. Gnutti appealed to the Superior Court, *R. O'Connell, J.,* which upheld the decision of the FHO. The FHO who conducted the hearing in the case of Smalley found that he too was able to work despite his alcoholism, and, as a result, determined that he was ineligible for Medicaid disability benefits. Smalley appealed to the Superior Court, *Purtill, J.,* which upheld the decision of the FHO.

In these consolidated appeals from the two judgments, each plaintiff claims that the trial court in his case erred: (1) in finding that the DIM was not bound by federal law; (2) in failing to conclude that the standards applied in determining disability are arbitrary and illegal; and (3) in concluding that there was substantial evidence to support the decision of the FHO that he was not disabled. Gnutti claims further that the trial court in his case erred in not vacating the deci-

---

[3] The Congress has established the following definition of disability for both Social Security and Medicaid programs: "The term 'disability' means—(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423 (d) (1) (1982).

sion of the FHO when there was evidence that the FHO had improperly consulted medical vocational guidelines in determining that he was not disabled. Smalley raises an additional claim that the trial court erred in determining that the findings of fact made by the FHO in his case were sufficient to support the conclusion that he was not disabled.

The defendant maintains that there is an alternative ground for affirming the judgments below that renders it unnecessary for this court to review the plaintiffs' claims. This contention is that under federal law the DIM may not grant medicaid disability benefits to persons who have been denied SSI disability benefits by the Social Security Administration.[4]

We conclude that our courts should abstain from considering Medicaid disability claims until a person who has applied for SSI disability benefits has exhausted all federal administrative or judicial avenues for obtaining such relief. In view of our determination, we shall not review the plaintiffs' claims. We shall, however, briefly examine the defendant's alternative ground for affirmance in reaching our conclusion that these appeals should be remanded to the trial court to be stayed until the ongoing federal administrative and judicial proceedings for the determination of whether each plaintiff is disabled have been completed.

I

The defendant argues that the DIM may not grant Medicaid disability benefits to those who have been

---

[4] The defendant described his alternative ground for affirmance as follows: "The Department [of Income Maintenance] may not grant Medicaid under the 'medically needy' option when the [plaintiffs] are financially able for categorical assistance." The thrust of the defendant's argument in pursuing this alternative ground for affirmance, both in his brief and at oral argument, was that the DIM could not grant Medicaid disability benefits to a person who had been found ineligible for SSI disability benefits. Therefore, we have restated the defendant's alternative ground for the sake of convenience.

found ineligible for SSI disability benefits because the United States Department of Health and Human Services (HHS) has imposed that policy upon it. In *Rousseau* v. *Bordeleau,* 624 F. Sup. 355 (D.R.I. 1985), however, the federal district court rejected a similar argument and held that the state of Rhode Island could not automatically deny Medicaid disability benefits to those who had been found ineligible for SSI disability benefits, because the HHS policy statement did not have the force of a federal regulation binding upon state agencies administering the Medicaid program. The *Rousseau* court noted that "[a] policy statement appears to be an internal determination of the [HHS], not subject to public comment as are regulations. Thus, an action twice removed from the statement of Congressional policy is at issue. As a policy statement, there is no basis to afford particular weight to the [HHS's] statement." Id., 358. The *Rousseau* court held: "The statute and regulations require that applications for Medical Assistance be reviewed independently of any denial action made by the Social Security Administration. A fair hearing process requires not only an independent review of an applicant's claim of disability but also the possibility of a result different from the federal determination." Id., 361.

*Rousseau* is the only case directly on point in this area. One federal court has cited the *Rousseau* case with approval. *Mullins* v. *Kenley,* 639 F. Sup. 1252, 1260 n.10 (W.D. Va. 1986), aff'd in part, rev'd in part on other grounds sub nom. *Mullins* v. *Lukhard,* 816 F.2d 672 (4th Cir. 1987). On December 14, 1987, HHS issued proposed federal regulations that would forbid states from granting Medicaid disability benefits to persons who had been found ineligible for SSI disability benefits. 52 Fed. Reg. 47,414–47,718 (1987). HHS in these proposed regulations expressed strong disagreement with the *Rousseau* decision. Id., 47,416. The defendant has conceded that

these proposed regulations, if adopted after the comment period expires, would have only a prospective effect, and would not render this appeal moot.

The defendant has sought to distinguish this case from *Rousseau*. Rhode Island is an "SSI" state that employs the same financial eligibility standards in its Medicaid programs that the Social Security Administraton uses in its SSI program. On the other hand, Connecticut is a "Section 209 (b)" state, and is somewhat more restrictive[5] than SSI in terms of financial eligibility. 42 U.S.C. § 1396a (f); 42 C.F.R. § 435.121; *Schweiker* v. *Gray Panthers*, 453 U.S. 34, 38, 101 S. Ct. 2633, 69 L. Ed. 2d 460 (1981). The defendant concedes, however, that the DIM employs the same definition of disability as does the SSI. There is no difference between Connecticut and Rhode Island in their definition of disability requirements for receiving Medicaid benefits. There are no meaningful distinctions that would allow us to distinguish this case from *Rousseau*. If this court were to agree with the defendant's alternative ground for affirmance, we must disagree with the reasoning in *Rousseau*.

We agree with the defendant, however, that it makes little sense to have the DIM duplicate the work of the Social Security Administration in evaluating a person's disability claim when both agencies employ the same definition of disability. This court does not believe that due process requires duplicative review merely because two different agencies applying the same standards may reach different results.

---

[5] Under the "Section 209 (b)" option states can elect to provide Medicaid assistance only to those individuals who would have been eligible under that state's Medicaid plan in effect on January 1, 1972. *Schweiker* v. *Gray Panthers*, 453 U.S. 34, 38–39, 101 S. Ct. 2633, 69 L. Ed. 2d 460 (1981). "SSI" states follow the federal rules for financial eligibility, which are more liberal. Id.

This court, however, has had little experience in interpreting Social Security statutes and regulations, and, therefore, it would be somewhat presumptuous for us to reject *Rousseau.* According to the United States Supreme Court, "[t]he Social Security Act is among the most intricate ever drafted by Congress. Its Byzantine construction, as Judge Friendly has observed, makes the Act 'almost unintelligible to the uninitiated.' *Friedman* v. *Berger,* 547 F.2d 724, 727 n.7 ([2d Cir.] 1976), cert. denied, 430 U.S. 984 [97 S. Ct. 1681, 52 L. Ed. 2d 378] (1977)." *Schweiker* v. *Gray Panthers,* supra, 43. "[T]he Medicaid program is a morass of bureaucratic complexity . . . ." *Herweg* v. *Ray,* 455 U.S. 265, 279, 102 S. Ct. 1059, 71 L. Ed. 2d 137 (1982) (Burger, C. J., dissenting). We decline at this time to determine whether the extraordinarily complex Social Security and Medicaid statutes and regulations require the defendant to deny Medicaid disability benefits to persons who are ineligible for SSI disability benefits.

## II

We conclude that our courts should abstain from considering Medicaid disability claims until a person has exhausted federal administrative and judicial avenues for obtaining SSI benefits that he is pursuing simultaneously.[6]

The United States Supreme Court in *Railroad Commission of Texas* v. *Pullman Co.,* 312 U.S. 496, 61 S. Ct. 643, 85 L. Ed. 971 (1941), held that federal courts should abstain from deciding a federal constitutional question until a state court has resolved questions of

---

[6] These abstention and exhaustion principles would be pertinent where a person has first applied to the DIM for Medicaid disability benefits, and subsequently seeks Social Security disability benefits. If a person, however, chooses to apply only to the DIM for Medicaid disability benefits, and declines to apply for Social Security disability benefits, then our courts will not invoke these abstention and exhaustion principles even where a person could have sought federal disability benefits.

state law where the state determination might render the federal question moot. "Such constitutional adjudication plainly can be avoided if a definitive ruling on the state issue would terminate the controversy." Id., 498. *Pullman Co.* involved review of state administrative action, and federal courts have applied the abstention doctrine in the context of state judicial and administrative proceedings. Under the abstention doctrine, federal courts stay their consideration of federal questions until a litigant has exhausted his state administrative and judicial remedies. "The rule of exhaustion . . . is rooted in considerations of federal-state comity. That principle was defined in *Younger* v. *Harris,* 401 U.S. 37, 44 [91 S. Ct. 746, 27 L. Ed. 2d 669] (1971), as 'a proper respect for state functions,' and it has as much relevance in areas of particular state administrative concern as it does where state judicial action is being attacked." *Preiser* v. *Rodriguez,* 411 U.S. 475, 491, 93 S. Ct. 1827, 36 L. Ed. 2d 439 (1973).

We conclude that abstention principles apply equally well where ongoing federal administrative or judicial proceedings may render a case in this court moot. The defendant has conceded that the DIM must provide Medicaid benefits to a person if the Social Security Administration determines that he is disabled. Each plaintiff is pursuing judicial and administrative appeals contesting the Social Security Administration's initial denial of his application for SSI disability benefits.[7] If either plaintiff succeeds in his federal appeal, his state case will become moot. In fiscal year 1986 federal administrative law judges (ALJ) heard 151,752 cases involving persons who had been denied Social Security disability benefits. House Comm. on Ways and Means, Background Material and Data on Major Programs Within the Jurisdiction of the Committee on Ways and Means, W.M.C.P. 100-4, 100th Cong., 1st Sess. 42

---

[7] See footnote 2, supra.

(1987). In 78,737 or 51.9 percent of these cases ALJs reversed the decision of the Social Security Administration, and found thè applicant to be disabled. Id. There is a substantial possibility that one or both of these plaintiffs will succeed in his federal appeal, and, therefore, his state Medicaid case will become moot.

We hold that our courts should abstain from considering Medicaid disability claims where a person is also pursuing federal administrative or judicial procedures for obtaining SSI benefits. Accordingly, the trial court should have stayed the administrative appeal of each of these plaintiffs until their federal remedies for a determination of their disability status had been exhausted.

The judgments dismissing each appeal on its merits are set aside and each case is remanded to the trial court for further proceedings consistent with this opinion.

In this opinion the other justices concurred.